UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENEFIT VISION INC., and <br> RONALD KLEIMAN, individually and as <br> President of Benefit Vision Inc., <br><br> Plaintiffs, <br><br> v. <br><br> CONSECO LIFE INSURANCE <br> COMPANY, <br><br> Defendant. | 12 C 3025 <br><br> Judge George M. Marovich |

## MEMORANDUM OPINION AND ORDER

After many years of paying monthly fees to plaintiffs Benefit Vision Inc. ("Benefit Vision") and Ronald Kleiman ("Kleiman") for life-insurance policies plaintiffs had sold, defendant Conseco Life Insurance Company ("Conseco") stopped paying. Plaintiffs filed this suit.[1] The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court grants in part and denies in part defendant's motion for summary judgment. The Court grants in part and denies in part plaintiffs' motion for summary judgment.

**I.     Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not

---

[1] The Court has jurisdiction over this case, because the parties are diverse and the amount in controversy is greater than $75,000.00. Plaintiff Ronald Kleiman is a citizen of Illinois. Plaintiff Benefit Vision Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant Conseco is an Indiana corporation with its principal place of business in Indiana.

considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. At the summary judgment stage, it does not suffice to rely on complaint allegations. Nor is it enough for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth *admissible* evidence of his or its version of the fact.

Defendant Conseco filed a motion to strike plaintiffs' memorandum in support of its motion for summary judgment. Conseco argues that plaintiffs filled their brief with facts plaintiffs did not include in their statement of facts. As the Court explained above, the Court ignores facts that parties include only in a brief and not in a statement of facts. Thus, the Court will ignore any facts included only in plaintiffs' brief. That does not mean, though, that the Court will strike plaintiffs' memorandum, which contains plenty of appropriate argument. The Court need not bother to strike that which it can simply ignore. Conseco's motion to strike is denied.

The following facts are undisputed unless otherwise noted.

Plaintiff Kleiman started a company called Benefit Vision Inc. ("Benefit Vision") to sell life insurance policies to LA County employees. Kleiman needed, however, an insurance product to sell.

Kleiman approached Life Partners Group in early 1995.  Benefit Vision and Life Partners Group held a series of meetings to discuss matters.  Ultimately, in April 1995, Kleiman and Benefit Vision began selling to LA County employees universal life insurance policies underwritten by Philadelphia Life Insurance, a company owned by Life Partners Group.  The LA County employees to whom Kleiman sold policies paid the premiums for the insurance via payroll deduction.  Kleiman and Benefit Vision were paid an agent's commission plus $.4166 per month ($5 per year) for each policy sold.  Plaintiffs alleged in their second-amended complaint (and therefore admitted) that the monthly fee "recognize[d]" plaintiffs' role "in maintaining and servicing the policies and protecting the block of business."

Kleiman and Benefit Vision continued selling the policies until sometime between 2000 and 2002 (the parties disagree about the timing, but it does not matter).  All in all, Kleiman and Benefit Vision sold more than 26,000 policies.  At some point before 2000, defendant Conseco bought (or at least succeeded) Life Partners Group, and it may have been Conseco's subsequent bankruptcy that prompted Kleiman and Benefit Vision to stop selling the policies (though the reason is not relevant).

For years, Conseco continued to pay Kleiman and Benefit Vision the $.4166 fee per policy per month.  To be precise, Conseco, like Life Partners Group before it, paid the fee for each policy only so long as the policyholder continued to pay for the policy by payroll deduction.  As individual policyholders left LA County's payroll (due to, say, retirement or loss of job) such that those policy holders could no longer pay their premiums via payroll deduction, Conseco stopped paying Kleiman and Benefit Vision the $.4166 per month fee on those policies even if the policyholder continued to pay for the policy directly.  As long as the policy holders continued to pay their premiums via payroll deduction, Conseco continued to pay Kleiman and Benefit Vision the monthly fee until 2010, when Conseco abruptly stopped.

As of April 14, 2010, Conseco completely stopped paying the monthly policy fee to Kleiman and Benefit Vision. On August 10, 2011, Kelly Honn, Conseco's Director for Administration, sent Kleiman a letter of explanation. The letter stated, among other things: (1) that Conseco had searched for but had not found any written agreement to pay the $.4166 per policy/per month fee; (2) that Kleiman had not provided one, either; and (3) that any such agreement would need to be in writing. The letter also stated that Conseco had concluded that the prior payments had been in error. Conseco said it would not pay the fees going forward but would not seek to recoup the prior payments.

Kleiman, for his part, does not know whether a signed agreement ever existed. When asked whether the parties ever signed a contract or other document with the terms, he answered, "I'm not aware. I'm just not aware."

Conseco searched for a signed, written agreement between Life Partners Group and Kleiman/Benefit Vision. Conseco did not find a traditional contract. It found two internal business records that are related to this dispute, and it produced them during discovery, at which time Kleiman saw the documents for the first time.

The first internal document (the "Life Partners Group Standard Procedure") is four pages long and is type-written. It contains no handwritten signatures. The first page of the document states:

| LIFE PARTNERS GROUP | Date: 03/21/95 |
| STANDARD PROCEDURE | Page 4 of 4 |
| | Revised: 04/27/95 |

_____

| Subject | Prepared by K. Fethkenher | |
| | Department: Field Office Administration | |
| LA COUNTY | Approved By: A. Vrchota | Use This Column |
| SALARY REDUCTION CASE | Effective Date: 04/27/95 | For |
| ANNUALIZATION ADVANCES | | Procedural Notes |

_____

VIII: The 61JH100 account will be recovered by earnings assigned from the 61JH002. Once the debit is cleared, all monies will be released and the assignment removed from the 61JH002.

(Docket entry 80 at Exh. A p. CLIC000047). The second page states, in relevant part:

*CONFIDENTIAL: For Home Office Use Only*

*COMMISSION NOTES AND RATES:*
FOA will manually annualize and pay commission for Kleiman (see annualization notes).

All commissions earned on 61JH002 (Kleiman) will be assigned to 61JH100 to pay off the debit balance. If the debit is paid off, the assignment will be released and commissions will be paid as earned.

Only one product will be offered, universal life, ULA95. No commissions will be paid on over control premiums.

Jo Delle Roberts will be 1099d for all administrative fees.

Automatic face increases are a product feature that will pay a different commission rate. Need to address in future and write up detailed procedures on how to process commissions. The face increases will pay first year commissions of 60% (of premium) (5% renewal).

\*     \*     \*

*ANNUALIZATION NOTES:*

<u>Kleiman Only</u>: Annualization will be calculated manually based upon a transmittal submitted by Jo Delle. Monies will be wired within 48 hours of notice. Annualization amount will be debited from the 100 accounts and the corresponding entry will be the funds that are wired to Kleiman. All earned income will pay through the 002 number, which will be assigned to the 100 account, which will offset the debit.

\*     \*     \*

2040/566  04/27/14                                                                              Page 2 of 4

(Docket entry 80 at Exh. A p. CLIC000048). The third pages states, in relevant part:

*CLIENT/AFFILIATED COMPANY:*

Status:
    Client

Quota Share:
    To be determined.

*SPECIAL AGREEMENTS:*

Pre-case advance given by GAC. FOA Commissions to follow-up with GAC to transfer funds to "100" account.

New Business will process administrative fees payable to Jo Delle's 003 account. The account will be credited $10.00 for each policy issued and $1.24 per policy mailed. This will be done on a monthly basis. These payments should be applied as first year, non-bonusable earnings.

Premium Accounting will also pay 42¢ per month per policy on all policies paid for by Ron Kleiman.

*ADDITIONAL INFORMATION:*

All applications will be submitted by Kleiman with 100% of business going to Kleiman.

*HOME OFFICE MARKETING CONTACT*:

Ken Luzietti -- Executive Vice President (x2213)
Jo Tucker -- Vice President (x2240)

2040/566  04/27/95                                                                 Page 4 of 4

(Docket entry 80 at Exh. A p. CLIC000049). Ken Luzietti was part of the original working group that set up the insurance product Kleiman sold.

The second internal document (the "Atlantic City/LA County" document) Conseco found and produced during discovery is a type-written memo on Life Partners Group letterhead. It contains no signatures and is not dated. It states:

   To:        Ken Luzietti
   From:      Judy Fania
   Subject:   Atlantic City/LA County-- Proposed procedure for in-
              force administrative fees

PURPOSE:

To obtain direction.

BACKGROUND:

The easiest method for counting premium paying policies is as follows.

Upon processing the group payment tape, the EMAPPS system will generate a Payment Processing Report for each BCN. This report contains payment detail by policy number

with an ABCN. The summary report totals this information by policy count for accepted and rejected payments.

Based upon the summary information, the List Bill Technician that pays the group will calculate the total administrative fees due. A fee of $.41666 per premium paying policy per month will be sent to Ron Kleiman on a monthly basis.

In the event premium is refunded on a policy, the administrative fees for the following month will be adjusted accordingly.

An alternative method for determining the fees due would be to count the payments processed by BCN as reflected on the Collections report. This method would be very time consuming as policies would be counted manually.

The only other method would be to run a DYL by BCN of all payments applied to policies the prior month. A monthly DYL would be the most accurate, but would take more time and resources than using the existing report out of EMAPPS.

NECESSARY ACTION:

Please advise me of the way you would like to count the number of policies paid to arrive at the fees.

(Docket entry 80 at Exh. A p. CLIC000107). The Atlantic City deal mentioned in the subject line never materialized.

Plaintiffs filed suit, and the parties filed cross motions for summary judgment.

## II. **Summary Judgment Standard**

In a diversity case, such as this one, the Court applies state substantive law and federal procedural law. *Erie RR v. Tompkins*, 304 U.S. 64, 78 (1938). The parties seem to agree that Illinois law applies.

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III.    Discussion

Plaintiffs Kleiman and Benefit Vision filed a four-count complaint against Conseco. In Counts I and II, plaintiffs allege Conseco breached their contract when it stopped paying the $.4166 per month policy fee in 2010. In Count III, plaintiffs allege promissory estoppel. Count IV is another claim for breach of contract, this time for underpayment during the years 1995-2010.

####    A.    Defendant's affirmative defense to Count IV.

In Count IV, plaintiffs allege that Conseco (and Life Partners Group before it) underpaid the policy fee from 1995 to 2010. Specifically, plaintiffs allege that once a policy-holder stopped paying for her policy via payroll deduction (because, say, the employee quit her job or retired), Conseco (and its predecessor before it) stopped paying the $.4166 per month fee on that policy even if the policy-holder continued the policy by paying the premium directly. The undisputed facts confirm these allegations.

Conseco moves for summary judgment with respect to its affirmative defense to Count IV. Conseco argues that this claim is barred under Illinois law by the 10-year statute of limitations for written contracts or the five-year statute of limitations for unwritten contracts.

*See* 735 ILCS 5/13-205; 735 ILCS 5/13-206.  The facts are undisputed that, beginning in 1995, Life Partners Group did not pay the policy fee for policies that were no longer paid for by payroll deduction and that Conseco continued the practice when it took over.  Plaintiffs did not file suit until 2012, more than ten years later.

Plaintiffs did not respond to defendant's motion for summary judgment with respect to this issue.  The Court concludes that Count IV is time-barred as a matter of law.  Regardless of whether the five-year or ten-year statute of limitations applies, plaintiffs filed suit more than ten years after Conseco (and Life Partners Group before it) commenced its practice of not paying the $.4166 per month fee on policies that had transitioned from payroll deduction to self pay.  Defendant is entitled to summary judgment on Count IV.[2]

### B. Plaintiffs' claims for breach of contract and the statute of frauds

In Counts I and II, plaintiffs allege that Conseco breached their contract when, in April 2010, it stopped paying the $.4166 per month per policy fee.  Plaintiffs move for summary judgment on the merits, and defendant moves for summary judgment as to its affirmative defense, the statute of frauds.

It is clear, to begin with, that plaintiff can establish the existence of an oral contract to pay $.4166 per policy.  It is undisputed that in early 1995, Benefit Vision and Life Partners held a series of meetings to discuss Benefit Vision's desire to sell a Life Partners insurance product to LA County employees.  In April 1995, plaintiffs began selling to LA County employees

---

[2]The Court does not read Counts I-III of plaintiffs' complaint as seeking payment for 2010 and beyond for policies that are no longer paid by payroll deduction.  To the extent plaintiffs are, however, seeking such payments, the Court notes that those portions of Counts I-III are also time-barred.

universal life insurance policies underwritten by Philadelphia Life Insurance (a company owned by Life Partners). The fact that plaintiffs actually sold the policies, together with the fact that Life Partners (and later Conseco) actually paid Benefit Vision and Kleiman $.4166 per month for each policy Benefit Vision/Kleiman sold evidences the parties' meeting of the minds. They agreed that Life Partners (which later became Conseco) would pay Kleiman/Benefit Vision $.4166 per month for each policy that plaintiffs sold.

The problem for Kleiman and Benefit Vision, who want to enforce that oral contract many years later, is the statute of frauds. The Illinois statute of frauds states, in relevant part:

> No action shall be brought . . . to charge any person . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 ILCS 80/1. Plaintiffs seem to concede that the contract is within the statute of frauds. (This is a reasonable concession. The contract was clearly intended to last beyond a year.) Plaintiffs argue, though, that they can still prevail, either because this case presents an exception to the statute of frauds for partial or full performance or because a writing exists that satisfies the statute of frauds. The Court considers these arguments in turn.

The doctrine of partial performance cannot help plaintiffs. The Supreme Court of Illinois has explained:

> A party's partial performance generally does not bar application of the statute of frauds, unless it would otherwise be 'impossible or impractical to place the parties in status quo or restore or compensate' the performing party for the value of his performance.

*McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 491 (Ill. S.Ct. 1997). Thus, partial performance will void application of the statute of frauds only where a party lacks an adequate remedy at law.

*Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 551 (7th Cir. 2005) ("The doctrine of part performance is an equitable doctrine. As such, the doctrine excepts only those actions seeking equitable relief from the writing requirement of the statute of frauds, to the exclusion of those claims where there exists an adequate remedy at law.") (internal citations omitted). That is why the case plaintiffs cite (*Monetti SPA v. Anchor Hocking Corp.*, 931 F.2d 1178 (7th Cir. 1991)) is distinguishable--Monetti had no adequate remedy at law. In *Monetti*, the plaintiff was trying to enforce an oral agreement allowing defendant to be the exclusive distributor of plaintiff's products in the United States and Canada. The Seventh Circuit said, "partial performance took the contract out of the general Illinois statute of frauds," because "once [plaintiff] turned over its trade secrets and other intangible assets to [defendant] it had no way of recovering those things." *Monetti*, 931 F.2d at 1183-1184. Unlike in *Monetti*, the plaintiffs in this case did not hand over any trade secrets. The plaintiffs in this case have an adequate remedy at law: money damages.

Next, plaintiffs argue that the statute of frauds is inapplicable in this case, because they have fully performed the contract. Plaintiffs are correct that, under Illinois law, "where a party has completely performed a contract, the contract is enforceable and the statute of frauds may not be used as a defense." *Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp.2d 768, 774 (N.D. Ill. 2010) (citing *Anderson v. Kohler*, 397 Ill.App.3d 773 (Ill.App.Ct. 2009)). If all plaintiffs were required to do under the contract was to sell the policies, then it could be said that plaintiffs have fully performed. Defendant, though, argues that plaintiffs may have been required to do more. In plaintiffs' second-amended complaint, they alleged (and therefore admitted) that the monthly fee "recognize[d]" plaintiffs' role "in maintaining and servicing the policies and

protecting the block of business." (Second Am. Complt. ¶ 9). Defendant seems to be arguing that this creates an issue of fact as to whether the contract required plaintiffs to do more than just sell the policies. The Court disagrees. In ¶ 9, plaintiff gives an explanation as to why it was rational for Life Partners Group to agree to pay a monthly fee over time. It is not evidence from which a reasonable jury could conclude that the contract included additional terms. Plaintiffs have established, as a matter of law, that they fully performed under the oral agreement by selling more than 26,000 universal life policies to LA County employees who paid for them by payroll deduction. Accordingly, defendant cannot use the Illinois statute of frauds as a defense.

Even if the defendant could use the Illinois statute of frauds as a defense to this case, the Court thinks plaintiffs have put forth evidence of a writing that satisfies the Illinois statute of frauds. The question of whether such a writing exists in a case is appropriately answered on a motion for summary judgment. *Monetti*, 931 F.2d at 1182 ("Because oral evidence was inadmissible on the question whether the documents meet the requirements of the statutes of frauds, it was proper for the judge to resolve it on motion for summary judgment.").

"The purpose of the Statute of Frauds is to prevent fraud, not facilitate it." *Crawley v. Hathaway*, 309 Ill.App.3d 486, 491 (Ill.App.Ct. 1999). To satisfy the Illinois statute of frauds, the writing "need not itself be a valid contract, but only evidence of one." *Crawley*, 309 Ill.App.3d at 490 (quoting *Melrose Park Nat'l Bank v. Carr*, 249 Ill.App.3d 9, 15-16 (1993)). A satisfactory writing can be "made up of several documents, such as notes, papers, or letters, as long as, taken together, they contain the required information either on their face or by reference to other writings." *Cohen Dev't Co. v. JMJ Properties, Inc.*, 317 F.3d 729, 737 (7th Cir. 2003). Even the word "signed" in the statute of frauds is a "term of art" that means more than just a

traditional handwritten-in-cursive signature. *See Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002) ("Neither the common law nor the UCC requires a *handwritten* signature."); *Monetti*, 931 F.2d at 1182 ("Since 'signed' in statute-of-frauds land is a term of art, meaning executed or adopted by the defendant, Schneider's typed initials are sufficient.") (internal citations omitted).

With these principals in mind, the Court considers the two documents that, according to plaintiffs, constitute writings that satisfy the Illinois Statute of Frauds. One document is the Atlantic City/LA County document, which is an undated internal memo printed on Life Partners Group letterhead. The memo is from Judy Fania ("Fania") to Ken Luzietti ("Luzietti"). The "subject" line of the memo reads: "Atlantic City/LA County--Proposed procedure for in-force administrative fees." In the memo, Fania suggests possible ways to count policies for which Kleiman should be paid a monthly fee, and, at the end of the memo, Fania asks Luzietti to tell her how to proceed. The memo also states, "A fee of $.4166 per premium paying policy per month will be sent to Ron Kleiman on a monthly basis." Plaintiffs argue that this document is a writing that satisfies the statute of frauds, but the Court disagrees. Although the document comes close, the subject line of the document refers not only to the LA County project (with respect to which the parties ultimately reached an oral agreement) but also the Atlantic City project, with respect to which it is undisputed that the parties never reached an agreement. That fact suggests that this document (which is undated) may have been created before the parties reached a meeting of the minds on LA County, such that the document may reflect not a contract but merely negotiations. The Court cannot agree that the Atlantic City/LA County document is a writing that satisfies the statute of frauds.

The next document that plaintiffs argue satisfies the statute of frauds is the Life Partners Group Standard Procedure. This four-page memorandum under the heading "Life Partners Group Standard Procedure" describes what is obviously internal accounting procedures for handling the universal life policies that Kleiman/Benefit Life were selling. It is an internal business record that Conseco produced in discovery. The Court agrees with plaintiffs that this document satisfies the statute of frauds. First, the document constitutes evidence of a contract in that it sets out the essential terms of the agreement. Among other things, the document states, "Only one product will be offered, universal life, ULA95," and "Premium Accounting will also pay 42¢ per month per policy on all policies paid for by Ron Kleiman." Thus, the document sets out the essential terms of the agreement: what insurance product Kleiman was selling and how much he was to be paid for selling the product. Conseco argues that the document speaks in future tense, such that it might merely evidence *negotiations* of a contract, rather than an actual contract. The Court disagrees. The document states that it was revised on April 27, 1995, with an effective date of April 27, 1995, by which time Kleiman and Benefit Vision were already selling the policies. The fact that the memo is written in the future tense is not evidence that the negotiations were continuing but rather that the accounting treatment described in the memo would continue to be followed in the future. Next, Conseco points to other language in the document (specifically, "Quota share: To be determined.") and argues that the document cannot be evidence of a meeting of the minds, because that term was left open. It is surprising that such an argument would come from an insurance company. A quota share agreement is an agreement a primary insurance company might make with a reinsurance company to share the premiums and also the risk on a book of business. It is not an agreement that would be reached between

the insurance company and the agent selling the policy. Thus, the fact that the document states that quota share was undetermined does not suggest that plaintiffs had not reached an agreement with defendant's predecessor.

The document also meets the signature requirement, because it was clearly adopted by Life Partners Group, who Conseco succeeded. The document states that it was prepared by K. Fethkenher and that it was approved by A. Vrochota. These were obviously agents of Life Partners Group. *See Central Ill. Light Co. v. Consolidation Coal Co.*, 349 F.3d 448, 491 (7th Cir. 2003) ("The document states that it was created by Debbie Wopmack and 'released to the system by' Beverly Wilson. Neither of these individuals is otherwise identified. The district judge thought that without further identification of them it could not be said that the document had been signed by an agent of Consolidation. That was not a realistic assessment. It is obvious that the people who prepare internal documents of this sort are employees, and hence agents, of Consolidation. . . . The absence of a handwritten signature is not a problem either.").

The Life Partners Group Standard Procedure satisfies the Illinois statute of frauds. Because a writing satisfies the statute of frauds in this case and because plaintiffs have fully performed under the contract, Conseco's statute of frauds defense fails as a matter of law.

In addition, plaintiffs have shown as a matter of law that Conseco breached their oral agreement when it stopped paying the $.4166 per month per policy fee in April 2010. Plaintiffs are entitled to summary judgment on their claims (Counts I and II) that defendant breached their oral agreement. Because plaintiffs have prevailed on their claim for breach of contract, their claim for promissory estoppel (Count III) is dismissed as moot. *See WorldCom, Inc. v. Free Paging, Inc.*, Case No. 00 C 7545, 2003 WL 1713603 at *9 n.5 (N.D. Ill. March 28, 2003).

Finally, plaintiffs argue that they are entitled to damages in the amount of $1,103,410.02. The Court will not grant summary judgment as to damages. Plaintiffs included no facts about their damages (or evidence to support those facts) in their statement of facts in support of their motion for summary judgment. Plaintiffs have not shown that they are entitled to judgment as a matter of law as to their damages.

## IV. Conclusion

For the reasons set forth above, the Court denies Conseco's motion to strike. The Court grants in part and denies in part Conseco's motion for summary judgment. The Court grants defendant Conseco summary judgment on Count IV. The Court grants in part and denies in part plaintiffs' motion for summary judgment. The Court grants plaintiffs Kleiman and Benefit Vision summary judgment as to the merits of Counts I and II. Count III is dismissed as moot.

ENTER:

George M. Marovich
United States District Judge

DATED: November 3, 2014